UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

EUGENE ANDERSON, )
 )
 Plaintiff, )
 v. ) No. 1:09-cv-1515-SEB-DKL
 )
D. REYNOLDS, et al., )
 )
 Defendants. )

**Entry Granting Defendants' Motion for Summary Judgment
and Directing the Entry of Final Judgment**

Plaintiff Eugene Anderson filed this action alleging that the defendants Officer D. Reynolds, Officer Z. Taylor, and Officer F. Haddad[1] used excessive force in the course of his arrest following a high speed chase on October 11, 2008, in violation of Anderson's Fourth Amendment rights.[2] Specifically, Anderson alleges that after he stopped and exited the vehicle he was driving, he cooperated with the Officers and did not continue to resist arrest. It was at that time that the Officers subjected him to excessive force by employing a head strike, a knee to the abdomen and a "double tasing simultaneously imposed by (2) two named defendants." Response, dkt 75 at 2. The Officers argue that the undisputed facts show that the force used in placing Anderson into custody was necessary and reasonable.

The Officers seek resolution of the claims against them through summary judgment. For the reasons explained below, the defendants' motion for summary judgment [63] is **granted.**

**I. Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the *Federal Rules of Civil Procedure*. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

---

1 Defendant Michael Skeens was dismissed for the reasons discussed in the Entry of June 7, 2011.
2 The claim brought pursuant to the Fourteenth Amendment was dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) in the Entry of December 22, 2009.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing the materials cited to do establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. See *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (citing cases). AIt is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.@ *Id.* at 1104 (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996).

Anderson has opposed the motion for summary judgment, but his response fails to create a genuine issue of material fact. Anderson suggests that the Officers' testimony is fabricated, but there is no evidence presented in support of this argument (not even an affidavit). Although we construe pro se filings liberally, pro se litigants are not exempt from procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The Seventh Circuit has "consistently and repeatedly upheld" district courts' discretion to require compliance with the local rules governing summary judgment. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)(collecting numerous cases).

Anderson's failure to properly oppose the motion for summary judgment, has a particular consequence, which is that he has admitted the truth of the defendants= statement of material facts for purposes of the court acting on the motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which Anderson was notified. This does not alter the standard for assessing a Rule 56 motion, but does Αreduc[e] the pool@ from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

The undisputed material facts considered in the light most favorable to the non-moving party, in this case Anderson, are as follows:

1. On October 11, 2008, at approximately 10:00 p.m., Anderson was illegally operating a vehicle owned by his friend. Anderson was traveling southbound on Martin Luther King Jr. Drive with the vehicle's lights disengaged. Officer Michael Skeens of the Indianapolis Metropolitan Police Department was traveling northbound on Martin Luther King Jr. Street when he observed Anderson operating the vehicle with its lights off. Officer Skeens turned his patrol car around and activated his emergency lights to stop Anderson. Anderson noticed Officer Skeens following him with his emergency lights activated, but did not stop.

2. Officer Skeens continued to pursue Anderson when they passed Officers Taylor and Haddad at 29th Street and Martin Luther King Jr. Street. Anderson subsequently increased his speed to approximately sixty (60) miles per hour. Officer Skeens activated his siren, and Officers Taylor and Haddad joined in the pursuit of Anderson. Anderson continued to refuse to stop his vehicle.

3. In the area of Roach Street and 27th Street, Anderson increased his speed in excess of eighty (80) miles per hour. Anderson then began to drive in circles through alleys and other streets around 27th Street and Highland Place. Anderson was creating a very dangerous situation because there were children out in the streets, and Anderson "could have easily – one of them kids could have walked out in front of that car." (Anderson Dep. 59:17-24.) During this time, Officer Reynolds joined the pursuit of Anderson. Officer Reynolds anticipated Anderson's direction and drove the wrong way on Highland Place with his emergency lights and siren activated. Reynolds blocked Anderson's path with his patrol car causing Anderson to stop, thereby ending the pursuit.

4. When the pursuit ended, Anderson jumped out of the vehicle and proceeded to walk toward Officer Reynolds. Officer Reynolds exited his patrol car, drew and pointed his service weapon at Anderson and repeatedly shouted at Anderson to "get down on the ground!" Officer Taylor likewise exited his patrol car, drew and pointed his service weapon at Anderson and commanded Anderson to, "Stop! Get on the ground now! Get on the ground! Get on the ground!" Anderson did not comply with the Officers' commands, and continued walking toward Officer Reynolds.

5. Anderson admits that it was reasonable for the Officers to come towards him with their guns drawn, "And I say that with the reasoning being that I had fled" and the Officers did not know who Anderson was or why he fled. (Anderson Dep. 60:8-10, 61:4-8.) Anderson admits that the Officers did know whether or not he had a gun on his person or inside the vehicle, and that he could have quickly pulled a gun out of his waist band.

6. As Anderson proceeded towards Officer Reynolds, who had his gun drawn and pointed at Anderson, Officer Taylor grabbed Anderson from behind and forced Anderson to the ground onto his stomach.

7. After Officer Taylor forced Anderson down to the ground and onto his stomach, Anderson immediately rose up onto his hands and knees, and attempted to stand back up. As Anderson rose, Officer Reynolds performed a single strike to the top of Anderson's head, which caused Anderson to fall back to the ground onto his stomach. Anderson then rolled over onto his back, sat up and began to rise. At this point, Officer Taylor holstered his service weapon and performed a single knee strike to Anderson's abdomen, forced Anderson back onto his stomach, and attempted to handcuff him.

8. As Officer Taylor attempted to handcuff Anderson, Anderson freed his hands and again attempted to roll over onto his back. In response to Anderson's continued physical resistance, Officer Reynolds loudly warned Anderson that if he continued to resist he would be tased, and began shouting "Taser! Taser! Taser!" Anderson refused to comply and continued to physically resist Officer Taylor's attempts to handcuff him. Consequently, Officer Reynolds tased Anderson. Officer Taylor promptly rolled Anderson back onto his stomach and handcuffed him, ending his resistance.

9. Even after Anderson was in handcuffs, he continued to be verbally abusive and physically resistant, and at one point had to be forced to sit back down.

### III.  Discussion

Anderson's claims are brought pursuant to 42 U.S.C. § 1983. This statute creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).

"In assessing whether the use of force during an arrest was proper, we ask whether the officer's actions were objectively reasonable in light of the conditions he faced." *Harris v. Smith*, 390 Fed. Appx. 577, 580 (7th Cir. 2010) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). These conditions include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[ ] or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* An officer's use of force violates the Fourth Amendment if "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) *(quoting Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). In a situation where an offender is resisting arrest, this means that an officer can use that amount of force necessary to overcome the offender's resistance. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997). "The particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

In this case, the defendant Officers faced the following circumstances:

- Anderson was illegally operating a vehicle with its lights turned off at 10:00 p.m.

- Anderson was unresponsive to the Officers' signals to pull over. As additional Officers joined the chase, Anderson increased his speed in excess of eighty miles per hour. Anderson led the Officers down alleys and through residential streets placing the lives of the Officers and children in the street in jeopardy. The chase only ended when an Officer blocked Anderson's path with his patrol car.

- After Anderson left the car he was driving, he continued to ignore the Officers' commands and physically resisted arrest.

Based on these facts, it was reasonable and necessary, based on both safety and practicability, to use force to apprehend Anderson. *See Mason v. Hamilton, Co.*, 13 F. Supp. 2d 829, 834 (S.D. Ind. 1998) (citing cases). Specifically, the undisputed evidence shows Anderson's continuing refusal to comply and unrelenting resistance necessitated every alleged instance of force.

- Because Anderson refused to stop, get down on the ground and lie on his stomach, and continued to approach Officer Reynolds, Officer Taylor forced Anderson to the ground and onto his stomach.

- Because Anderson rose to his hands and knees, and was in the process of standing back onto his feet, Officer Reynolds performed a single strike with his hand to the top of Anderson's head.

- Because Anderson turned over onto his back, sat up and attempted to rise, Officer Taylor performed a single knee strike to Anderson's abdomen.

- Because Anderson freed his hands from Officer Taylor's grip as he was being handcuffed and rolled over onto his back, Anderson was tased.

In each instance, the use of force was not greater than that which was reasonably necessary to make the arrest and thus the Officers are entitled to summary judgment on Anderson's claim that the use of force during the course of his arrest violated the Fourth Amendment.

The doctrine of qualified immunity protects public officials from civil liability when officials are performing discretionary functions where a reasonable official would have believed that his actions were within the bounds of the law at the time he acted. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). The Supreme Court has established a two-part analysis to decide when the doctrine applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In analyzing qualified immunity, a court should determine: (1) whether the facts, taken in a light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.*

For the reasons explained above, the Officers did not violate Anderson's Fourth Amendment rights by utilizing force in the course of Anderson's arrest. Thus, the Officers are protected from any liability for use of force based on the doctrine of qualified immunity.

## IV. Conclusion

There is no doubt that Anderson was entitled to certain constitutional protections during the course of his arrest on October 11, 2008, including the right to be free from constitutionally excessive force. He has not, however, come forward with a genuine issue for trial. *Liberles v. County of Cook*, 709 F.3d 1122, 1126 (7th Cir. 1983)("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). That is precisely the situation with respect to the present case, and the defendants' motion for summary judgment must therefore be granted. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("When the moving party has met the standard of Rule 56, summary judgment is mandatory.") (citing cases).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/15/2011

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana